# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VARELA, | CASE NO. 1:03-cv-06324-OWW-GSA PC |
| Plaintiff, | ORDER DISMISSING DEFENDANT SERMAN, WITHOUT PREJUDICE, PURSUANT TO RULE 4(M) |
| v. | |
| DERRAL ADAMS, et al., | (Doc. 55) |
| Defendants. | ORDER GRANTING DEFENDANT BELTRAN'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT |
| | (Doc. 70) |

I.   Defendant Beltran's Motion for Summary Judgment

Plaintiff Edward Varela ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed June 10, 2004, against Defendants Serman and Beltran for acting with deliberate indifference to a serious risk to Plaintiff's safety, in violation of the Eighth Amendment. (Doc. 18.) On July 2, 2007, Defendant Beltran ("Defendant") filed a motion for summary judgment.[1]  (Doc. 70.)  Plaintiff filed an opposition on August 21, 2007.[2]  (Docs. 73-75.)

---

[1] Defendant Serman was never served with process and did not make an appearance in this action.  The Court will address that issue in section II.

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on October 20, 2004.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 21.)

1

A.    Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

///

1  jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d
2  1433, 1436 (9th Cir. 1987).

3  In the endeavor to establish the existence of a factual dispute, the opposing party need not
4  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
9  amendments).

10  In resolving the summary judgment motion, the court examines the pleadings, depositions,
11  answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ.
12  P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all
13  reasonable inferences that may be drawn from the facts placed before the court must be drawn in
14  favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369
15  U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is
16  the opposing party's obligation to produce a factual predicate from which the inference may be
17  drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810
18  F.2d 898, 902 (9th Cir. 1987).

19  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
20  that there is some metaphysical doubt as to the material facts. Where the record taken as a whole
21  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
22  trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

B. <u>Material Undisputed Facts</u>

1. At all times relevant, Plaintiff was incarcerated at California Substance Abuse Treatment Facility ("SATF") located in Corcoran, California.
2. At all times relevant, Defendant was employed at SATF as a Correctional Officer.
3. Defendant has been employed at SATF since October 2001, and at the time of the incident at issue in this action, Defendant had worked at SATF for approximately four days.

4. The incident at issue in this action occurred on or around November 9, 2001, during the transport of inmates, including Plaintiff, via golf cart vehicle ("vehicle").

5. Defendant was a passenger escort in the vehicle, and was not driving the vehicle.

6. Plaintiff was loaded in the vehicle with approximately five other inmates.

7. A total of approximately eight passengers were in the vehicle at the time of the incident.

8. Plaintiff was handcuffed during the transport.

9. The vehicle made approximately three turns during the transport, and Plaintiff fell out of the vehicle on the third turn.

10. Plaintiff complained of being in pain and did not want to move right away.

11. The golf cart vehicles are used in the daily operations at the prison facility, which includes transporting inmates.

  C. <u>Eighth Amendment Conditions of Confinement Claim</u>

  In his amended complaint, Plaintiff alleges he and other inmates had been summoned to the Central Treatment Clinic for medical appointments. (Doc. 16, 2:19-23.) At the conclusion of the appointments, Defendants Beltran and Serman arrived to transport them back to their housing facilities in a golf cart-like vehicle with no doors, no seatbelts, and only four available passenger seats. (<u>Id</u>., 2:22-27.) Plaintiff alleges that he and the other inmates had their hands cuffed behind their backs for transport. (<u>Id</u>., 2:28-3:2.) The four passenger seats were taken by other inmates, so Plaintiff and the remaining inmates were instructed by Defendant Serman to get as comfortable as possible and kneel, squat, or stand in whatever space they could find. (<u>Id</u>., 3:2-5.) Plaintiff alleges Defendant Serman indicated he did not have time to make two trips, so the inmates had to all pile in. (<u>Id</u>., 3:6-8.)

  Plaintiff alleges that Defendant Serman drove recklessly and at high speeds despite the fact the inmates were not seated or buckled in and were unable to hold on to anything to prevent themselves from falling from the vehicle. (<u>Id</u>., 3:10-13.) Plaintiff alleges that Defendant Serman made a sharp turn and Plaintiff fell out of the vehicle, hitting his head and losing consciousness. (<u>Id</u>., 3:13-19.) Plaintiff alleges he suffered serious back, knee, shoulder, hand, and elbow injuries, as well as headaches and tingling in his toes. (<u>Id</u>., 3:19-21.)

Plaintiff alleges that both Defendants knew of the danger in transporting inmates in this manner and that Defendant Serman increased the danger by driving recklessly. (Id., 4:18-21.) Plaintiff alleges that Defendant Beltran failed to intervene when Defendant Serman began driving recklessly, and that both Defendants knew that inmates had fallen from the vehicle in the past. (Id., 4:21-24.)

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials

1  may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting
2  evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence
3  on the part of the prison official is not sufficient to establish liability, but rather, the official's
4  conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

5        Defendant Beltran's position is that the golf cart vehicle had a maximum speed of
6  approximately ten miles per hour, and was traveling at approximately five miles per hour due to the
7  number of passengers on board. (Doc. 70-3, Beltran Dec., ¶¶4, 7.) Defendant contends that the turns
8  made by the vehicle were not sharp, dangerous, or at a high rate of speed, and that the vehicle was
9  not operated in a reckless manner at any time. (Id., ¶¶5, 7.) Defendant denies any knowledge of
10 previous complaints about staff driving the vehicles recklessly and denies any knowledge of other
11 incidents involving inmates falling out of the vehicles. (Id., ¶8.) Defendant contends that at no point
12 in time during the transport was he aware of any significant risk of harm or any perceived risk of
13 harm to Plaintiff, and that he did not intentionally or negligently cause Plaintiff any harm. (Id., ¶¶9,
14 10.) Defendant contends that he would have stopped the vehicle if he had been aware of any risk
15 of harm to Plaintiff. (Id., ¶9.)

16       Defendant contends that after Plaintiff fell from the vehicle, he was seen lying on the ground
17 but was not unconscious. (Id., ¶5.) Defendant contends that Plaintiff complained of being in pain
18 and did not want to move right away, but did not appear to be in any distress and was able to
19 ambulate to the vehicle without assistance, at which time he was transported to the Correctional
20 Treatment Center for evaluation. (Id., 6.)

21       The Court finds that Defendant has met his initial burden of informing the Court of the basis
22 for his motion, and identifying those portions of the record which he believes demonstrate the
23 absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that
24 a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith
25 Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of
26 this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but
27 is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery
28 material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475

U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Assuming the truth of Plaintiff's allegations concerning the conditions of the transport, Plaintiff has made no showing that Defendant Beltran "had actual knowledge" of a serious risk of harm to Plaintiff and deliberately disregarded that risk. See Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000). At this stage, it is not sufficient to rest on conclusory assertions of the requisite mental state. Although Plaintiff contends that the transport situation clearly posed an obvious risk to his safety, he has not presented any evidence that Defendant Beltran was actually aware of the risk to his safety. (Doc. 74, Varela Dec., ¶5.) Neither Plaintiff's verified amended complaint nor Plaintiff's declaration submitted in support of his opposition sets forth any specific evidence raising a triable issue of fact concerning whether Defendant Beltran possessed the requisite mental state.[3] Therefore, Defendant is entitled to judgment as a matter of law.[4]

II.   Dismissal of Defendant Serman

Defendant Beltran waived service and made an appearance in this action. However, the United States Marshal was unable to locate Defendant Serman. On January 11, 2005, pursuant to Federal Rule of Civil Procedure 4(m), the Court ordered Plaintiff to show cause why Defendant Serman should not be dismissed from this action. Plaintiff filed a response on February 2, 2005, and

---

[3] Plaintiff's amended complaint is verified and is treated as an opposing affidavit by the Court. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

[4] Because the Court finds Defendant is entitled to summary judgment on the merits of Plaintiff's claim, it does not reach Defendant's qualified immunity argument.

7

based on that response, the Court discharged the order and notified Plaintiff that if he obtained further identifying information on Defendant Serman, through discovery or other means, he should notify the Court and it would direct the Marshal to attempt re-service.  Plaintiff was warned that when this action either resolved via a pre-trial dispositive motion or reached the point at which a trial date was set, Defendant Serman would be dismissed, without prejudice, pursuant to Rule 4(m), if Plaintiff had not provided the Court with any additional information on Defendant Serman.

The Court has found that Defendant Beltran is entitled to summary judgment, and Plaintiff did not provide any further identifying information on Defendant Serman.  Accordingly, Defendant Serman is dismissed from this action pursuant to Rule 4(m).

III.   Order

For the reasons set forth herein, it is HEREBY ORDERED that:

1. Defendant Serman is dismissed from this action pursuant to Rule 4(m);
2. Defendant Beltran's motion for summary judgment, filed July 2, 2007, is GRANTED, thereby concluding this action in its entirety; and
3. The Clerk of the Court shall enter judgment for Defendants and against Plaintiff and close this action.

IT IS SO ORDERED.

**Dated:   March 6, 2008**             /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE